JOHN PARKER AND ROBERT GRAHAM, AS EXECUTORS, ETC., OF JAMES LINDEN, DECEASED, APPELLANTS, *v* MARIA LINDEN, RESPONDENT, MARK LYTHGOE AND OTHERS, APPELLANTS.

*Will — construction of — when a testator will be held to have converted his real estate into personalty.*

By his will one James Linden, who died on June 10, 1885, leaving no issue, gave to one Maria Craig, *alias* Maria Linden, the respondent herein, one dollar, and authorized and empowered his executors to defend any claim which she might make against his estate, and declared that the said Maria was not his lawful wife. After making certain specific legacies he gave to his half-brothers, William Lego, Mark Lego, and his half-sister, Jane Lego, of Liverpool, England, all the rest, residue and remainder of his estate, both real and personal, to be received by them share and share alike. By the sixth clause he ordered that after his just debts and bequests were paid his real estate be sold at public auction under the direction of a referee appointed by an order of the Supreme Court, who should execute to the purchasers deeds of the premises, and deposit the net proceeds of the sale in the Supreme Court, to be invested under the direction of the court in the same manner as money belonging to non-residents, according to the rules and practice of the Supreme Court in such cases, for the use and benefit of the said half-brothers and sister.

The widow having recovered a judgment establishing her right to dower in the real estate, and certain legatees, including William and Jane Lego, having died in the lifetime of the testator. the executors brought this action for the construction of the will.

*Held,* that it was the intention of the testator to convert his real estate into personalty.

That the respondent Maria, as widow of the testator, was entitled to receive one-half of the lapsed legacies and one-half of the two-thirds of the residuary estate intended for William and Jane, and to $2,000 in addition thereto.

APPEAL from a judgment, entered in this action brought to obtain a judicial construction of the will of one James Linden.

One James Linden, residing in the city of New York, died on the 10th day of June, 1885, leaving no issue and a last will and testament made, executed and published on the 9th day of November, 1879, which will was duly admitted to probate by the surrogate of the city and county of New York, as a will of real and personal estate, on the 25th of August, 1885. By this will the testator gave to one Maria Craig, *alias* Maria Linden, the respondent herein, one dollar, and authorized and empowered his executors to defend any claim which she might make against his estate, and declared that the said Maria was no lawful wife of the testator.

After providing for some special legacies, the fourth clause of the will reads as follows: Fourth. After all my just debts and the money hereinbefore given and bequeathed, and the work ordered to be done and the gold watch delivered, then I give and bequeath to my half brothers, William Lego, Mark Lego, and my half sister, Jane Lego, now or late of Liverpool, England, all the rest, residue and remainder of my estate, both real and personal, of what nature or kind soever, to be received by them share and share alike, or in equal parts.

By the sixth clause of the will, the testator provided as follows: Sixth. I order, after all my just debts and bequeaths are fully paid and discharged, that my real estate be sold at public auction, under the direction of a referee appointed by the order of the Supreme Court; that said referee execute to the purchaser or purchasers a deed of the premises sold ; the proceeds of the sale, after deducting his fees and expenses of sale, said referee shall deposit in the Supreme Court, to be invested under the direction of said court in the same manner as money belonging to non-residents, according to

the rules and practice of the Supreme Court in such cases, for the use and benefit of William, Mark and Jane Lego, as before directed, subject to the further order of the court.

The respondent, Maria Linden, or Maria Craig, as she is called in the will, brought an action to have her dower assigned in the real estate of James Linden, deceased, as his widow, which resulted in a judgment declaring her to be the widow and assigning her dower in the real estate left by said James Linden. In consequence of the deaths of various of the legatees, and uncertainties as to the rights of the parties under the will, the executors therein named commenced this action for the construction of the will, and the court adjudged, amongst other things, that the respondent Maria Linden was entitled to receive, as widow of James Linden, one-half of the lapsed legacies and one-half of two-thirds of the residuary estate intended for William and Jane Lego, and to $2,000 in addition thereto, the said William and Jane having died in the lifetime of the testator. From this judgment this appeal is taken.

*Henry Brewster*, for plaintiffs, appellants.

*B. Vanderhoven*, for certain of the defendants, appellants.

*E. S. Peck*, for the respondent.

Van Brunt, P. J.:

The question involved in this appeal is whether the testator intended to convert his real estate into personalty by the provisions of his will.

It is urged that this construction cannot be placed upon the will because it is manifest that James Linden did not intend to convert the real estate into personalty for the benefit of Maria Linden. That he did not so intend is certainly manifest by the language of the will; and that he did not suppose that such would be the result arising from the provisions under the will that the real estate should be converted into personalty is equally apparent. But the question of the intention of the testator is whether he intended to convert his real estate into personalty. An examination of the will and a consideration of the circumstances under which the legatees were placed seems to show conclusively that such was the intention of

the testator. It is true that in the fourth clause of the will the testator makes a devise of the rest, residue and remainder of his estate, both real and personal, to his two half-brothers and his half-sister, absolutely. But it is to be remembered that the testator knew that these half-brothers and half-sister, being aliens, British subjects, could not take real estate by devise. It was this knowledge which undoubtedly caused the insertion in the will of the sixth paragraph, whereby he directed that all his real estate should be sold at public auction under the direction of a referee appointed by an order of the Supreme Court, and that the proceeds of sale should be deposited in the Supreme Court and invested under the direction of said court in the same manner as moneys belonging to non-residents. It seems to be clear that the testator intended that his estate should be converted into personalty in order that his alien brothers and sister might take. He seems to have been aware of the fact that he could not devise to them the realty, and that they could not take the realty as such. Hence, for the purpose of obviating this difficulty he provided for a conversion of the real estate into personalty and a deposit of the money in court for the use and benefit of his brothers and sister. If all his brothers and sister had died, and thus the necessity for conversion of the real estate into personalty had ceased to exist, perhaps this direction would have fallen and the real estate would have descended as realty. But although the learned judge who tried the case at the Special Term has found that one brother and sister have died and their legacies have lapsed, there is still a survivor, and it is necessary that the power of sale contained in the will should be carried into effect, so that he may receive his one-third share in money, he not being so situated that he can take the same as realty. The conversion of the estate, therefore, into personalty as was contemplated by the testator is absolutely necessary to the carrying out of the provisions of the will; and there, therefore, was a conversion of the real estate into personalty immediately upon the death of the testator, as was intended by him, and such residue must be distributed as personalty.

It is claimed, however, that the widow cannot claim dower in the real estate and also participate in the personalty, the proceeds of the real estate under the statute of distributions. The answer to

this proposition seems to be that the widow would have been entitled to her dower in this real estate had the testator sold it in his lifetime and left the proceeds in his will as personalty. And if the testator could not deprive the widow of her dower in the real estate by a sale before his death, he could not deprive her of dower in the real estate by directing the conversion of such real estate into personalty after his death. In both cases the widow, so far as the testator died intestate as to his personal estate, would be entitled to her share of the personal estate, and she would also have been entitled to dower in the real estate out of the sale of which this personalty arose.

It would appear, therefore, that the judgment of the court below was correct, and should be affirmed with costs.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed with costs.